NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIA RUIZ, | |
| Plaintiff, | Civil Action No. 07-2889 (SDW) |
| v. | **OPINION** |
| NEW JERSEY STATE POLICE, TROOPER K. BROWN, and TROOPER NICHOLAS DECESARE, | September 14, 2009 |
| Defendants. | **CASE CLOSED** |

**Wigenton**, District Judge

      Pending before the Court is a Motion for Summary Judgment filed by the New Jersey State Troopers K. Brown and Nicholas DeCesare of the New Jersey State Police (the "Trooper Defendants") and the New Jersey State Police (Collectively "Defendants").  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343.  Venue is proper pursuant to 28 U.S.C. § 1391.  The Motions are decided without oral argument pursuant to Federal Rule of Civil Procedure 78.

I. **Factual Background**[1]

      On July 27, 2006, Plaintiff Maria Ruiz was involved in a head-on motor vehicle accident on Interstate Route 287-North in South Plainfield, New Jersey.  Her vehicle sustained heavy damage and the airbags deployed.  When questioned at the scene by Trooper Brown, Ruiz gave several conflicting versions of the how the accident happened, stating she was on the New Jersey Turnpike, on the Garden State Parkway, and several other accounts.  However, at her deposition,

---

[1] The following facts are undisputed.  In fact, Plaintiff's brief recites the facts as presented in Defendants' brief verbatim.

Ruiz testified that she crossed the median, ran head-on into oncoming traffic, and "totaled" her car.

After the collision, Ruiz was helped out of her vehicle and taken to an ambulance by two Emergency Medical Services ("EMS") workers. She complained to the EMS workers that she was having some chest pain and tightness in her chest upon inhalation. She was collared, neck-boarded, and taken to the hospital by ambulance.

EMS volunteer Holly LaFererra was with Ruiz at the scene and remained with her until she was turned over to the emergency room nurse for care at the hospital. While treating Ruiz, Ms. LaFererra moved Ruiz's shirt around her shoulders to check for seatbelt burns because she was complaining of chest discomfort. LaFerrara noted that Ruiz was dazed and confused during the time she attended to her.

A bottle of the prescription drug Zoloft was found in Ruiz's car at the time of the accident. The medication contained the warning "Do not operate heavy machinery." Ruiz admits she was taking Zoloft at the time of the accident and also explained this to LaFerrara at the scene. Before Ruiz was taken to the hospital, Trooper DeCesare administered a "horizontal gaze nystagmus test" ("HGN"). The test revealed an involuntary jerking of the eyes, indicating she failed the test.

Based on the totality of the circumstances, including Ruiz's conflicting statements, the physical evidence available, and the nature of the accident itself, Ruiz was issued a summons for Driving While under the Influence ("DWI"). While in the hospital, Ruiz consented to having her blood drawn by the hospital staff. On August 21, 2006, the State Police Laboratory reported that Ruiz's blood samples contained neither drugs nor alcohol. The DWI charge was ultimately dismissed based on those lab results.

## II.     Procedural History

On May 9, 2007, Ruiz filed a Complaint in the Superior Court of New Jersey, Bergen County. The Complaint contains two counts in which Ruiz alleges that (1) Defendants violated her civil rights pursuant to 42 U.S.C. §1983 because they lacked probable cause to arrest and/or charge her with DWI pursuant to N.J.S.A. § 39:4-50; and (2) one of the Trooper Defendants committed an assault on her by removing her blouse while she was in the ambulance. Ruiz seeks compensatory and punitive damages. Defendants removed the case to this Court on June 19, 2007. Following an arbitration award dated July 9, 2008, Ruiz sought a trial de novo on August 8, 2009. This Motion followed.

## III.    Standard for Summary Judgment Under Rule 56

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt about the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 318 (1986). Once the moving party meets its initial burden, the burden then shifts to the non-movant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Shields v. Zuccarini,* 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crafting Co.,* 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson,* 477 U.S. at 255).

In order to defeat a motion for summary judgment, the respondent "must introduce more than a scintilla of evidence showing that there is a genuine issue for trial; [it] must introduce evidence from which a rational finder of fact could find in [its] favor." *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005) (citing *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1020 (3d Cir.1991)). In *Anderson*, the Supreme Court stated:

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . .

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**IV.     Discussion**

    **A.     Claims Pursuant to 42 U.S.C. § 1983**

Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or

> other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Hence, the two "essential elements" of a § 1983 claim are "(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States."  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) (overruled on other grounds by *Daniels v. Williams*, 474 U.S. 327 (1986)); *West v. Atkins*, 487 U.S. 42, 48 (1988); *Phillips v. County of Allegheny,* 515 F.3d 224, 235 (3d Cir. 2008).

"By itself, Section 1983 does not create any rights, but provides a remedy for violations of those rights created by the Constitution or federal law."  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906–7 (3d Cir. 1997).  In bringing a § 1983 claim, a plaintiff must "identify the exact contours of the underlying right said to have been violated."  *Downey v. Coalition Against Rape and Abuse, Inc.*, 143 F. Supp. 2d 423, 437 (D.N.J. 2001) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).  Here, the Complaint does not explicitly state which civil rights Defendants allegedly violated.  However, the briefs show that all parties agree that the complaint alleges claims for both malicious prosecution and false arrest.  (*See* Compl. ¶ 14 ("[D]efendants lacked probable cause to arrest and/or charge the plaintiff with a violation of N.J.S.A. 39:4-50").)

There is no dispute that the Trooper Defendants were acting under the color of state law when they questioned Ruiz, administered the HGN test, and issued a summons for DWI.  Thus, the relevant inquiry is whether the Troopers are "persons" under § 1983 and if so, whether they deprived Ruiz of her rights, privileges, or immunities under the Constitution.  The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons'

5

under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71.  Hence, Ruiz's § 1983 claim against the State Police, as an arm of the state, must fail as a matter of law.  The Complaint does not make clear whether the State Troopers are sued in their official or individual capacities.  To the extent they are sued in the official capacity, that § 1983 claim also fails.  However, even if the Complaint is construed as naming the Troopers in their individual capacities, Ruiz's § 1983 claim still fails because they are entitled to qualified immunity.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known*."  Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).  As the Supreme Court recently explained:

> Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.  The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

*Pearson*, 129 S. Ct. at 815 (quoting *Groh v. Ramirez,* 540 U.S. 551, 567, 124 (2004) (KENNEDY, J., dissenting)).  In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court mandated a two-step process for determining whether a government official is entitled to qualified immunity.  First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201.  Second, the Court must determine whether the right was clearly established at the

6

time it was allegedly violated. *Id.*[2] *See also Curley v. Klem*, 499 F.3d 199, 209 (3d Cir. 2007) ("Our recent precedents say that the court, not a jury, should decide whether there is immunity in any given case.")

The only constitutional right at issue here is whether, under the Fourth Amendment, the Trooper Defendants had probable cause to arrest and charge Ruiz with a DWI. The Supreme Court has held that police officers cannot be held liable under § 1983 "'if they acted in good faith and with probable cause.'" *Anderson v. Creighton*, 483 U.S. 635, 663-664 (1987) (quoting *Pierson v. Ray*, 386 U.S. 547, 555 (1967)). "Probable cause to arrest exists when the information within the arresting officer's knowledge at the time of the arrest is sufficient to warrant a reasonable law enforcement officer to believe that an offense has been or is being committed by the person to be arrested." *Paff v. Kaltenbach*, 204 F.3d 425, 436 (3d Cir. 2000)*; Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995) ("[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."). Determining whether an officer had probable cause for an arrest requires a "common sense approach . . . based on the totality of the circumstances." *Paff*, 204 F.3d at 436.

Ruiz argues that by charging her with a DWI, the Troopers were "abusing an[d] exceeding their authority in jumping to rash conclusions that turned out not to be true." (Plf.'s Br. 7.) However, Ruiz's ultimate guilt or innocence is immaterial to the question of whether the Police had probable cause at the time of the arrest. "'[A] peace officer who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later

---

[2] The Supreme Court recently downgraded this "rigid order of battle" from mandatory to advisory. *See Pearson*, 129 S. Ct. at 817–18 (holding that "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory.").

7

proved.'" *Anderson,* 483 U.S. at 664 (quoting *Pierson*, 386 U.S. at 555).  As the Third circuit has instructed, "[t]he proper inquiry in a section 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Phila.,* 855 F.2d 136, 141 (3d Cir. 1988).

"[A] district court may conclude 'that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding,' and may enter summary judgment accordingly." *Estate of Smith v. Marasco*. 318 F.3d 497, 514 (2003) (quoting *Sherwood v. Mulvihill,* 113 F.3d 396, 401 (3d Cir.1997)).  Here, the Trooper Defendants were provided with eyewitness accounts and physical evidence that Ruiz crossed into oncoming traffic on Interstate 287 and caused a head-on collision.  When they questioned Ruiz, her explanations of the accident varied widely, and included references to the Turnpike and the Parkway even though the accident occurred on Interstate 287.  A bottle of the prescription drug Zoloft with the warning label "Do not operate heavy machinery" was found in Ruiz's car.  Ruiz admitted to EMS worker LaFererra that she was taking Zoloft and failed the HGN test.  None of these facts are disputed.  Considering the totality of the circumstances, and viewing all the facts in the light most favorable to Ruiz, it is clear that the Troopers had probable cause to arrest her.  Thus, no constitutional violation occurred and no reasonable jury could find otherwise.  Summary Judgment is therefore appropriate. *See  Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000) ("Summary judgment is appropriate if no reasonable juror could conclude that [Plaintiffs'] clearly established rights were violated.").  Moreover, because a lack of probable cause is an essential element of claims for both malicious prosecution and false arrest,

8

*see Startzell v. City of Phila.*, 533 F.3d 183, 204 (3d Cir. 2008), those claims fail as a matter of law irrespective of Defendants' qualified immunity.

### B.   Common-Law Assault

The Complaint alleges Ruiz was assaulted in the ambulance when she "had her blouse removed by either defendant Trooper DeCesare or Trooper Brown and was . . . transported into the emergency room without a blouse." (Compl. Count II ¶ 2–3.). At her deposition, Ruiz testified that Trooper DeCesare entered the ambulance and cut her T-shirt off. (Defs.' Ex. B 11:15–22.) EMS Worker LaFererra stated in her sworn certification that she was with Ruiz for the entire ambulance ride, that the Troopers did not remove or attempt to remove Ruiz's shirt, and that Ruiz's shirt was still on when they arrived at the Hospital. (Defs.' Ex. I ¶ 5.) Both Troopers also testified that they did not cut or remove any clothing from Ruiz.

Ruiz also testified that the shirt-removal incident took place in the presence of the EMS workers and that she had not been complaining of chest pain (*Id*. 11:18–24.) However, the Complaint admits that "Troopers DeCesare and Brown were advised the plaintiff was complaining of chest pains" when they arrived at the accident scene. (Compl. Count I, ¶ 3, 6.) Ruiz does not dispute that she was taking Zoloft at the time of the accident and that EMS worker LaFererra reported she was dazed and confused when she was attending to her in the ambulance. Nor does Ruiz dispute giving the Troopers at the scene conflicting reports of how the accident happened.

Ruiz argues that the conflicting stories regarding the removal of her shirt create a genuine issue of material fact making summary judgment inappropriate. Inexplicably, Ruiz admits that "[o]ther than her own assertion, there is no supportive evidence such an action took place" and that "there can be no serious dispute that Plaintiff's cognitive perceptions and recollection were,

9

and remain, impaired." (Plf.'s Br. 4.). In addition, there are significant inconsistencies between Ruiz's testimony, the allegations in her Complaint, and her factual admissions in response to this Motion. Having carefully reviewed all the evidence presented, this Court concludes that no reasonable jury could find for Ruiz by a preponderance of the evidence. *See Anderson*, 477 U.S. at 252 (1986). Thus, there is no genuine issue for trial and Defendants' Motion for Summary Judgment is GRANTED.

    **SO ORDERED.**

s/ Susan D. Wigenton  
**Susan D. Wigenton, U.S.D.J.**

cc: Madeline Cox Arleo, U.S.M.J.